Good morning, Your Honors. Emil Herrick, appearing for the plaintiff and appellate, Perrin Bernard Supowitz. And I'm going to apologize for my nervousness. This is my first time to argue before this Court. If it pleases the Court, this case involves an egregious acts of trade secret misappropriation committed by the defendants, who include two former employees of the plaintiff and a client. As further background, it must be noted that the District Court found that both Pablo Morales and Savino Morales were trusted employees of the plaintiff and that they'd been with the plaintiff for 25 years, Your Honor. It is also worth observing that this isn't simply some low-level employee that goes out and competes. These were very highly compensated employees. In 2021, Mr. Pablo Morales made $420,000 for my client for that year. Let me try to focus our attention a little bit. What exactly is before us today? This is not an appeal from a final judgment. It's an appeal from the denial of preliminary injunction. That's right, Your Honor. Preliminary injunction wasn't based on or wasn't requested based on kind of generic misconduct. As I understand it, it's a misappropriation of trade secrets. That's right, Your Honor. So why does any of the rest of this matter? I think it's important general background, Your Honor. Why does it matter? You're basically trying to think these are bad guys and we ought to get some kind of help because these are bad guys. The law doesn't work that way. We have a claim for misappropriation of trade secrets. District Court declined to grant a preliminary injunction and that's an interlocutory decision. It's a preliminary injunction. It's not reflecting a final judgment, not reflecting ultimate findings. The law permits appeals of injunctive relief, including preliminary injunctive relief, but that's what our jurisdiction is limited to, plus issues inextricably intertwined. Well, all of this you're talking about basically they're bad people. They've conducted misconduct. They've breached their duty to the corporation. I don't see how that's relevant to a claim that's a misappropriation of trade secrets claim. So I'd like to focus on that. Thank you, Your Honor. And unfair business practices as well. Well, but see that's part of my concern too because what exactly, you're not entitled to final relief as part of preliminary injunction. What exactly is protected? How is the status quo preserved by granting you the preliminary injunction relief that you sought more than a year ago? What's granted, how do we accomplish anything by granting it today? Well, you grant, you accomplish something by you prevent the continued misappropriation of my client's trade secrets. Okay, so tell me what misappropriation of trade secrets is a problem today? Today the problem is that they continue to solicit business from the same customers they serviced when they were employed by my client. But it appears that those customers are basically anybody who's buying these kinds of supplies. We disagree with that, Your Honor. I mean, again, the food service industry, it's ubiquitous. There are thousands and thousands and thousands of customers for these pipe services. These gentlemen didn't go and compete fairly and get business from these hundreds of thousands of other places. They directed their efforts to the clients and customers of our client. And why did they do that, Your Honor? Well, the reason they did that is they had pre-existing relationships. They knew our customers pricing. You're talking about something other than trade secrets in terms of knowing who their customers were. They knew these entities bought from your company because you could figure out lots of entities including these entities bought from your company. I don't see it's clear there's a trade secret in there. I disagree, Your Honor. I think our customer lists are a trade secret and I think it was difficult. Why? Why are they a trade secret? Why is it a secret? Because under More Life and the progeny of those cases, it says any customer list that's the product of substantial time and effort to compile is a trade secret. What's so hard about compiling entities that acquire things from food service companies? Well, I think you've already said almost everybody's out there. There are thousands and thousands of customers. These are among them. But you know what these particular customers need, what specific type products they want, what type money they're willing to pay for. I think if you look at what the defendant said, and let me jump ahead here. I mean, look at what the defendant's statements were. For instance, Mr. Savino Morales, and this is at 4 ER 462. He was asked whether this customer list that he admitted he compiled with his assistant over years of time, he was asked whether that was valuable to him. In fact, the specific question was whether the book's value was to provide him with information about contacts and various customers that he had called and that he was employed by plaintiff. And the defendant Savino testified yes. And then it goes on. When he was found out, or he was, Mr. Savino Morales was so concerned that this list of customers, the people that he contacted, might be known to, to even other employees at my client. He, he was very upset about that. And what he said was, he wrote my client an email and said, regarding the email from Marcell, we are very hesitant on any other sales rep knowing anything about our accounts. They should be treated with confidentiality, just the way you treat your cost. I don't want anyone knowing who I sell and nevertheless at what price I'm selling items for. We had a situation a while back where a rogue salesman took info and went to work for the competition and created a mess for many sales guys. Unless you can guarantee me no one is leaving. So Mr. What seems unique about this case is that the alleged trade secret was acquired while Mr. Morales, while they were still working at IFS. Yes, sir. And then that information was conveyed to a competitor that they helped create. Yes, sir. And then, and then utilized. And the question, and the question is whether that information is itself of some value to constitute a trade secret. Is it, is that right or no? It obviously is, your honor. The proof of the pie is in the pudding. Look at what these gentlemen did. In the six months, or less than six months, that they went in while they were working for my client, and while they established, therapeutically acquired and put their company legacy into operation. I think the numbers are somewhat staggering. I think I have them here. They were, I'm flipping through my notes, but essentially it was, they had a hundred, a million three in sales, of which almost nine hundred thousand came from our clients. They had a hundred and eighty-four thousand profits in the six months. A hundred and fifty-four came from sales to our clients. So what they did is they targeted and, and reaped the benefits of the trade secrets of all these years that they developed these customers and clients. You've got to I don't think those are the same thing. I don't think you do, your honor, prospectually. If you look at more, you can take that position, but you better point me to something to support. More life, your honor. More life. In fact, if the court would just look at courtesy, courtesy temporary services versus Camacho, and my favorite case is More Life, because More Life said that, dealt with that very same point. They argued in More Life, hey, well, you know, what can you do? These employees leave. They have knowledge of this customer relationships. They built these customer relationships are. They know who these people are. So, of course, they should be able to, they can't blank their mind out. They can't have some secret soap that washes their memory clean. And More Life said, no, no. That, that basically undermines the whole idea here, here, which is the, the employer, my client, paid these guys $500,000, $600,000 a year to develop business. That's my client's business. They, stop right there. Once again, you're going down the path of perhaps a violation of their obligation to your client based on their, their contractual or employment relationship. But the fact that they've developed relationships, that's not a trade secret. Yes, it is, your honor. Yes, it is under More Life, your honor. Please read More Life. I've read More Life. Okay. It's a very different kind of, of targeted market. You already acknowledged that food service companies sell to thousands of customers. That's not the situation we have in More Life. Your honor, I've read the cuts, the statute many, many times. There's not one reference in that market. The concept of what's a trade secret has to deal with the time and effort. It has to do with having knowledge that other people wouldn't have. And if we're talking about a targeted customer of almost anybody who buys from a food service company, it's not hard to figure out who might be interested in buying from a food service company. Your honor, why did they go back and solicit from our client's customers? Because they had personal relationships, which you say are the same thing, and I'm pretty convinced are not. So did you want to leave any time for rebuttal? I'm sorry. Did you want to leave any time for rebuttal? I did, your honor. Thank you so much. Go ahead, Mr. Lesowitz. Thank you. May it please the court, Scott Lesowitz for the appellees and defendants. Um, responding to a few points that, um, uh, by my opposing counsel made here. Um, first of all, in terms of this supposed deposition testimony of Sabino Morales regarding his customer list, the actual question wasn't whether the list was valuable to him. It was whether it was a quote. I'm sorry whether it had quote some value unquote. So it was asked whether it had some value to him. Mr. Lesowitz, can I mind about since we don't have much time? This is what I'm struggling with about this case is this isn't a case about employees who developed cultivated customer relationships, then left and then in competition, you know, forming their own company, trying to woo the services of those of those former customer, you know, customers from their former employer. This is about information that was acquired in the course of their employment with I. F. S. Using that information by sending it to a competitor and an hour having to determine whether that information has some value and whether I. F. S. Was trying to keep that information secret. Uh, let me ask you this. If if I was working for a company and I reached out to a competitor and said, I will sell you information of customers that I have cultivated for $1000 and that cause and that competitor says yes, and it pays me the money. Is that an actionable claim under the D. T. S. A. Or cut? So well, it depends what that information is. I mean, customers that I've cultivated a list of names of customers that I've cultivated and that the company that I'm working for is trying to keep that information secret. Would that be actionable under under cuts? I think it could. It likely would. What would then explain? I do, too. And I'm wondering, what's the distinction between that and the allegation that the defendants sent that information to a competitor that they created who then monetized and took and benefited from if if there's some value from that information of the customers that are being serviced by this company. Why is it any different when we're the other? Well, I think there's a few issues here. One is that I don't think there's evidence of like of sending in mass information like this to legacy and then legacy using it. It was just that they knew who I mean, they knew who they're the customers were was anybody that could potentially use it. They different factual scenario. But what legacy knew what legacy knew were the customers that were IFS's customers. So not just in general. It's a big food services industry. There are many potential customers and they happen to know these particular ones. Doesn't that hold some value? Your Honor, first of all, whether it holds some value to them, I don't think is the test, but also there's the question of. Well, who would it be valuable to? I mean, they say it's not to them. Who would it be? They're the ones that had the information and the other ones that used it. It seems to me value to them is exactly the test. OK, a few things here. One is that the. I don't see I'm having a hard time understanding what information they received from IFS and then use. There are 20 customers that IFS has that I've cultivated. You can reach out to those same customers who are in the market for these services legacy and you can try to cultivate those relationships and steal them from IFS. And lo and behold, legacy manages to do that and makes money off of it. Why isn't that information of value to support a trade secret claim? Well, there's there's different questions here. I'm not sure we're talking about the summary judgment or the the preliminary injunctions. The preliminary injunction. The question is whether 18 months later, knowing that information has continued value, that would make it a abuse of discretion for the court to find that there is no more. There is no more continuing threat of irreparable harm that could not be cured by monetary damages. Those are two very separate questions. And the in terms of whether it ever was an issue that is so while they were working for after you leave the company, you are free the next day to to call up all of your customers and compete in California. No, I agree. But but this is a while you were working for the company for a year, you were doing this. That's that's what makes this a little bit more of a challenging issue for me. Sure. But I think what the the what the court found in its ruling is that they are able to go back and sue for monetary damages for the any profits that legacy made from these sales while they were working for for IFS and even perhaps in a little bit of the period afterward, but they may still have some commercial advantage. But there's no reason to think that, you know, now 18 at the time, I think was 10 months now, 18 months later, any of this information has value. IFS didn't even attempt to to claim or argue that there is continued value. And another issue I think, you know, IFS in its briefing, especially in reply, made a big deal about how also we have the unfair competition claim. There's seventeen two hundred. If you go back and look at their motion papers, motion for preliminary injunction, they never raised seventeen two hundred or UCL in any way. That's waived 10 times, 10 possible ways, if not more being, you know, facetious there a bit. But even it's once again, even if and what you're saying about the well, they work there, that that's that they have responsibility under the duty of loyalty cause of action, which we didn't even file a motion for partial summary judgment. There could be liability there. Right. And I get that. I'm just trying to think narrowly about the value of this information that IFS tried to keep confidential through confidentiality agreements. And did the district court analyze it in a way that would suggest that this could be actionable because that information could be of some value or could be valuable? That's that's what I'm trying to get at. If you don't mind me having to narrow it down a little bit, the court did find the only information where the court said it's not a trade secret and never was, was the identity of the customers and I guess like their cell phone numbers. Otherwise, the order information, the credit information, what the customers paid, the court found that that could be a trade secret for purposes of summary judgment that could go to trial on that. The court just said, but as of now, it has no value. It's not useful anymore, you know, and so there's no injunctive relief, but they could still get damages. And as for the the identity of customers, I think it's important that one thing that IFS completely ignored in its reply and is ignoring now that we pointed out on pages nine and 13 of our opposition is that IFS conceded below that the identity of its customers is not a trade secret. If you look at 3 ER 545 to 46, which is from the defendant's renewed motion for summary. I'm sorry, the IFS is opposition to our renewed motion for summary judgment. IFS wrote, quote, Here it is not the mere identity of IFS's customers that constitutes the trade secret, end quote. So I don't know what the court did wrong. The court, they conceded the identity of the customers is not a trade secret. And as for the other information, can I ask this? What was it proper for the court to segment that information? For example, maybe the names alone might not be valuable, but the names in conjunction with order and pricing information and who to contact in order to generate business that together creates the value. Was there any problem with the district court segmenting that information artificially? I don't think so. I mean, I don't think so at all. I think that that's you have to look at each piece of information separately. And IFS even said it's not the mere identity that does. And he said, OK, well, so that's not. But what about all this other information? Maybe I think it's 18 months later. And also, I want to point out that all this customer order information is found on the invoices, which are not confidential. The customers are free to share them. As my clients testify in their declarations, they frequently see the invoices from competitors. They constantly know this information. And that's how they that's how they generate business. They who are you buying from? Give me your invoices. And it's also the evidence that they never use this information after they left. They didn't need to. That's the big thing. They didn't need to. They already this is old, stale information. And they can just say, hey, you know, send me over your prior invoice. And also, the big thing here is we look at the declarations is that it's the relationships. It's that they know these people. They work with these people for years and years, know them. They focused on on Mexican restaurants and Mexican wholesalers primarily. So you had a good relationship, spoke Spanish with most of their customers, et cetera. So I think the big thing here is I don't see how monetary damages are insufficient. I don't think there was even really an attempt to explain that. Just, oh, well, they made some profit. OK, well, you can take the profit back for monetary damages that they earned in that period. What's happening now? Eighteen months later, you know, in the monetary and the monetary damages could be, in theory, recovered under their trade secret cause of action for the for the orders or the loyalty or which? Both. OK, I mean, both of them are alive. I mean, there's I don't see what I look at. Frankly, I never saw this as a trade secret case. I think the trade secret damages are coextensive with the duty of loyalty claims. I always thought they were over litigating this case and overcomplicating it, frankly. And I don't know why they wanted to make it harder for a jury. But the has the litigation continued? I mean, is there still a lawsuit? A lot is you've referenced other causes of action that could result or even the trade secrets claim that could result in monetary damages. I don't want to get into the details of that, but I take it the litigation has continued. Yes, yes. OK, let's see if any other questions from my colleagues. OK, thank you, Mr. Oswitz. Thank you, Your Honor. A few really fast comments, seven cases that we cited, same facts, preliminary injunction was granted even in courtesy Chevrolet. They overruled and found that the trial judge had abused his discretion by not granting a preliminary injunction on identical facts that we have here, Your Honor. Second of all, there was no concession. We were writing and saying we have so much more than just simply client names. That's not a concession that client names and identities are not a trade secret. It's simply saying, hey, we've got a lot more than that. Perhaps that was awkwardly written. I wouldn't have written it that way, but that was the point of that statement. The third point is there's no time limits on these kind of trade secrets. None of the seven cases that we were relying on to be here today said, oops, six months, oops, seven months, you can't get a preliminary injunction. But now I want to talk back to you, Your Honor, and you said point me to where in Morelife you're making this argument that somehow the fact that these folks develop relationships, how that still remains the trade secrets of the employer. And I've got you, Your Honor. It's at Morelife 56 Cal App 4. The pin site would be page 1526. And at that point, they're discussing a case called Moss Adams and Company v. Schilling, which found the other way. And let me quote just very briefly, and I'll end on this. Again, they're distinguishing Moss Life, which went against the arguments that I'm presenting. And the statement is, furthermore, in absolving former sales personnel from disclosing or using customer information that would otherwise qualify as a trade secret to solicit business, the court in Moss Adams did not appropriately recognize that information developed by an employee concerning the employee's customers represents an investment of time and money on the part of the employer, justifying a grant of trade secret protection against exploitation by the former employee. Trade and business secrets and confidential business information are the property of the employer and cannot be used by the employee for his own benefit. A list of subscribers of a service built up by ingenuity, time, labor, and expense of the owner over a period of many years is the property of the employer, a part of the goodwill of his business and, in some instances, his entire business. Knowledge of such a list acquired by an employee by reason of his employment. You're way over the time, but let me just point out everything you've read talks about the trade secret being the list developed perhaps through personal relationships. It doesn't talk about the personal relationship itself as being a trade secret. I know of no authority that treats the value of a personal relationship, which may well be a basis of a claim for breach of loyalty, a breach of contract, so forth. I don't know of anything that calls that a trade secret, and what you just read doesn't either. Okay, Your Honor. Thank you for your time. I'm over my limit. Thank you so much for hearing me today, and have a good day. Counsel, thank you both for your arguments. The matter will stand submitted.
judges: CLIFTON, SANCHEZ, Korman